

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-8-2001

# BT of Bricklayers v. Wettlin Assoc Inc

Precedential or Non-Precedential:

Docket 00-1382

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"BT of Bricklayers v. Wettlin Assoc Inc" (2001). *2001 Decisions.* Paper 3.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/3

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 8, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1382

BOARD OF TRUSTEES OF BRICKLAYERS AND
ALLIED CRAFTSMEN LOCAL 6 OF NEW JERSEY
WELFARE FUND,
          Appellant

v.

WETTLIN ASSOCIATES, INC.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 99-cv-04874)
District Judge: Honorable Garrett E. Br own, Jr.

Argued November 14, 2000

Before: SLOVITER, AMBRO, and WEIS,
Circuit Judges

(Filed: January 8, 2001)

          John A. Adams, Esquire (ARGUED)
          Thomas J. McGoldrick, Esquire
          McAleese, McGoldrick, Susanin &
           Widman, P.C.
          Suite 240 -- Executive Terrace
          455 South Gulph Road
          King of Prussia, Pennsylvania 19406

           Counsel for Appellant

Roland Morris, Esquire (ARGUED)
M. Elaine Jacoby, Esquire
Duane, Morris & Heckscher, LLP
One Liberty Place
Philadelphia, Pennsylvania
 19103-7396

    Counsel for Appellee

OPINION OF THE COURT

WEIS, Circuit Judge.

The issue in this case is whether ERISA's definition of "fiduciary" includes an entity that receives contributions from employers and awards benefits to participants pursuant to an agreement with trustees of a union welfare fund. We conclude that the allegations in plaintiff's complaint were sufficient to preclude a ruling that no fiduciary status existed as a matter of law. Accor dingly, we will reverse the District Court's ruling that the complaint failed to state a claim.

The facts are taken from the plaintif f's proposed amended complaint. Plaintiff is the Board of T rustees of Bricklayers and Allied Craftsman Local 6 of New Jersey W elfare Fund, an employee benefit plan within the meaning of ERISA, 29 U.S.C. S 1002(3). The members of the Boar d of Trustees have the discretionary authority to manage and control the Local 6 Fund and are fiduciaries under ERISA, 29 U.S.C. S 1002(21)(A). They meet only four to six times a year.

In 1988, the Board entered into an agr eement providing that defendant Wettlin Associates, Inc. would provide administrative services to Local 6 Fund. The Boar d delegated to Wettlin the day-to-day r esponsibility to control, manage, hold, safeguard, and account for the fund's assets and income. Wettlin determined the legitimate expenses of the fund, wrote checks, and disbursed assets fr om the fund's bank account in accordance with such determinations. That conduct was within W ettlin's discretion and it was not required to seek approval from the Trustees in advance.

2

Wettlin was also required to collect contributions from employers under the terms of collective bar gaining agreements, deposit them in Local 6 Fund's bank account, and make payments in accordance with the fund's obligations under the plan. As stated in the agr eement, Wettlin would receive the following monthly compensation:

| | |
|---|---|
| Welfare Fund | $2,208.33 |
| Pension Fund | $ 833.33 |
| Annuity Fund | $ 833.33 |
| Apprentice Training Fund | $ 41.67 |
| TOTAL | $3,916.66 |

According to the complaint, "effective as of January, 1996, the [Local 6] Fund also collected fringe benefit funds from contributing employers which, in tur n, were to be transferred by the Fund for deposit to the New Jersey Bricklayers and Allied Craftworkers Health Fund[(`state-wide fund')]." In carrying out this arrangement, Wettlin was to transfer ninety-eight percent of the employer contributions earmarked for the state-wide fund to that entity. The amended complaint alleges that the two percent not transferred became an asset of Local 6 Fund.

In February 1998, the Board notified W ettlin that its services would terminate on April 1, 1998. Beginning on March 1 and continuing through Mar ch 31, Wettlin paid itself $42,743.71 from the Local 6 Fund account, the amount representing the two percent withheld from payments to the state-wide fund.

Upon learning of this series of payments, the Board demanded reimbursement, and when this was r efused, filed suit in the District Court of New Jersey. The Boar d alleged that Wettlin was a fiduciary under ERISA and had breached its duty to the fund. The complaint also pleaded various state law claims.

Relying on Federal Rule of Civil Procedur e 12(b)(6), the District Court dismissed plaintiff's complaint because it failed to offer any factual basis to support its allegation that defendant was a fiduciary under ERISA. Plaintif f then proffered an amended complaint, which was rejected by a

3

magistrate judge on the ground that it failed to state a claim that would survive a motion to dismiss. The District Judge agreed and dismissed the case, observing that Wettlin's role was "nothing mor e than ministerial." The Board appealed.

We exercise plenary review when examining the grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Lorenz v. CSX Corp., 1 F.3d 1406, 1411 (3d Cir. 1993). We accept the allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. Id. Only if it appears certain that a plaintiff could prove no set of facts supporting its claim and entitling it to relief do we affir m. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir . 1985).

The Board of Trustees argues that W ettlin can be a fiduciary under ERISA because discretion is not always a prerequisite for such a role. Even if discretion is required, the Board contends that the amended complaint sets forth a factual basis for concluding that Wettlin did function in that manner. Wettlin contends that it was not a fiduciary because it acted in a ministerial capacity, exer cised no discretion, and additionally asserts that the money in question was not an asset of Local 6 Fund.

The ERISA provision at the heart of this case sets out the description of a fiduciary:

> "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee . . . or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

29 U.S.C. S 1002(21)(A) (emphasis added).

This statutory definition requires that a fiduciary "must be someone acting in the capacity of manager , administrator, or financial advisor to a`plan.' " Pegram v. Herdrich, 530 U.S. ___ , 120 S.Ct. 2143, 2151 (2000). The

4

statute uses differing criteria in imposingfiduciary obligations for each of these roles. For planfinancial advisors, Congress assigned a fiduciary duty in subsection (ii) both to those who actually render advice and those who simply have the authority to do so. 29 U.S.C. S 1002(21)(A)(ii). For plan administrators, subsection (iii) limits fiduciary status to those who have discr etionary authority or discretionary responsibility. 29 U.S.C. S 1002(21)(A)(iii). For managers, subsection (i) sets the criteria.

Subsection (i) of 29 U.S.C. S 1002(21)(A) dif ferentiates between those who manage the plan in general, and those who manage the plan assets. These functions ar e set out in two clauses under subsection (i) separated by the conjunction "or." A significant dif ference between the two clauses is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word "discretionary" is conspicuously absent when the text refers to assets. "This distinction is not accidental –– it reflects the high standard of car e trust law imposes upon those who handle money or other assets on behalf of another." FirsTier Bank, N.A. v. Zeller, 16 F.3d 907, 911 (8th Cir. 1994). See Daniel Candee Knickerbocker, Jr., Fiduciary Responsibility Under ERISA, S 2.05 (2000).

This distinction was emphasized in IT Corp. v. General American Life Insurance Co., 107 F.3d 1415 (9th Cir. 1997). In that case, the administrator had check-writing authority over the money received from the employer that was deposited in the plan's bank account. Id. at 1417. Noting that the "statute treats control over the cash differently from control over administration," the Court concluded that "`[a]ny' control over disposition of plan money makes the person who has the control a fiduciary." Id. at 1421.

The Court of Appeals noted that because the employer had the responsibility to keep an amount in a bank account sufficient to cover checks validly issued by the administrator, "as a practical matter , a substantial amount of money would [have been] under the contr ol of [the administrator], in the form of a bank account which it could deplete by writing checks." Id. Where there is such "authority or control," the District Court could not hold that

5

the administrator was a non-fiduciary as a matter of law. Id.

In Yeseta v. Baima, 837 F.2d 380, 386 (9th Cir. 1988), the same Court of Appeals held that a corporate officer who withdrew plan funds for the company's benefit was a fiduciary, despite authorization for the withdrawal from other officers. Noting that section 1002(21)(A) establishes that a person can be a fiduciary on the basis of control of a plan's assets, the Court concluded it was unnecessary to sort through the disputed facts to deter mine authority because control could decide the issue. Id .

A corporate officer in LoPresti v. T erwilliger, 126 F.3d 34, 40 (2d Cir. 1997), commingled company assets with benefit funds, and used them to pay company debts. Hinting that the District Court had apparently failed to appreciate the significance of the second clause of subsection (i), the Court of Appeals reversed. Id. It held that an individual may also become an ERISA fiduciary by exercising any authority or control in connection with the management or disposition of plan assets. Id.

We come then to Confer v. Custom Engineering Co., 952 F.2d 34 (3d Cir. 1991), on which the District Court relied in the present case. Confer, a participant in an employee health benefit plan, alleged a breach offiduciary duty when he was denied medical benefits following an accident. Id. at 35. He sued his employer, Custom Engineering Co., which was the plan's administrator and fiduciary, as well as the officers of that company. Id. He also named as a defendant Self-Funded Plans, Inc., which had been delegated day-to-day administrative tasks for the plan. Id. W e affirmed summary judgment in favor of the company officers, concluding that corporate officers acting on behalf of a corporation are not themselves fiduciaries unless they have individual discretionary roles in plan administration. Id. at 37.

More important to the case before us, we also held that Self-Funded, the day-to-day administrator, was not responsible for wrongfully denying benefits to the plaintiff. Id. at 39. "Since discretionary authority, responsibility or control is a prerequisite to fiduciary status, it follows that

6

persons who perform purely ministerial tasks, such as claims processing and calculation, cannot befiduciaries because they do not have discretionary r oles. Self-Funded had no discretion to deny or allow [plaintif f]'s claim." Id. (citation omitted). The plaintiff's assertion to the contrary had "no basis in the plan document, in Self-Funded's contract with Custom Engineering, or anywher e else in the record." Id.

There are important distinctions between Confer and the case at hand. Self Funded's alleged breach was with regard to its responsibilities in the administration of benefits under the plan; therefore, its fiduciary status under ERISA was determined by subsection (iii) of 29 U.S.C. S 1002(21)(A). Plaintiff in that case never alleged mismanagement of assets. Thus, Confer concluded only that plaintiff had not demonstrated that Self-Funded had discretionary authority or discretionary r esponsibility in the administration of the plan. Confer, 952 F .2d at 39.

Wettlin does not argue that subsection (iii) applies in the present case. Although Confer addr essed subsection (iii), id., Wettlin contends that the statements in that opinion linking fiduciary status and discretion apply to all ERISA fiduciaries. We reject this ar gument as contrary to the statutory text. "Discretionary" authority or responsibility is required to confer fiduciary status for plan administration under subsection (iii), and "discretionary" authority or "discretionary" control is r equired for plan management under subsection (i). As noted earlier, however, the adjective "discretionary," so carefully selected for plan administration and management, is omitted in subsection (i) when dealing with authority or control over the management or disposition of plan "assets." "The statute treats control over the cash differently from contr ol over administration." IT Corp., 107 F.3d at 1421.

That Congress established a lower threshold for fiduciary status where control of assets is at stake is not surprising, given that "[a]t common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries." Pegram, 120 S.Ct. at 2155 ("[T]he common law trustee's most defining concern historically has been the payment of

7

money in the interest of the beneficiary."). "By mandating the trust form and by transposing the duty of loyalty from trust to pension law, the drafters of ERISA wer e able to institute a familiar fiduciary regime to pr otect pension funds against internal defalcation." John H. Langbein & Bruce A. Wolk, Pension and Employee Benefit Law, 649 (2d ed. 1995).

Finally, Confer cited a series of interpr etive questions and answers promulgated by the Department of Labor and published at 29 C.F.R. S 2509.75-8. Confer, 952 F.2d at 36-37. Wettlin contends that question D-2 is r elevant to our determination, characterizing its own actions as simply "administratively ministerial," similar to those the Department of Labor concluded were non-fiduciary functions of a plan administrator. After examining the Department of Labor's interpretation to which W ettlin points to, we conclude that it addresses situations like that in Confer, involving the administration of benefits under a plan, and does not speak to the activities under subsection (i).1 In any event, these agency interpretations are not binding on us. See Christensen v. Harris County , 529 U.S. ___, 120 S.Ct. 1655, 1662-63 (2000).

This is not the first case in which we have noted that the structure of subsection (i) is significant in its interpretation. In Curcio v. John Hancock Mutual Life Insurance Co., 33 F.3d 226, 233 (3d Cir. 1994), we observed that although the party in that case was not a fiduciary under the second half of subsection (i), separate analysis was necessary to

_____

1. Wettlin relies on 29 C.F.R.S 2509.75-8 D-2, function (8), one of the categories that the Labor Department opines is non-fiduciary, as similar to its role in the present plan: "Collection of contributions and application of contributions as provided in the plan." The other listed functions in the illustrative answer are pur ely administrative. We also examined question FR-15, which states that a namedfiduciary may not delegate responsibility for management and control of plan assets to anyone other than investment managers. 29 C.F .R. S 2509.75-8 FR-15. As we read this answer, it distinguishes responsibility for management of assets from discretionary conduct in other management functions. Thus, read as a whole the questions and answers do not aid Wettlin's cause.

determine whether the first clause did give the party that status.

Unlike the defendant in Confer, Wettlin's potential liability is created by subsection (i), which addresses fund assets and directs that fiduciary status be assigned to the extent that a person "exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. S 1002(21)(A)(i). To the extent it applied dicta in Confer to the analysis of subsection (i), the District Court erred.

The contract attached to the plaintiff's amended complaint lists the functions to be perfor med by Wettlin. Most of these appear to be purely ministerial and are specifically subject to the direction of the trustees. The provisions directing Wettlin to collect contributions and write checks on Local 6 Fund's account, however , are quite general in scope. Wettlin would have us construe these terms narrowly, in effect establishing it as a mere depository of Local 6 Fund assets. See IT Corp. , 107 F.3d at 1421.

We are inclined to agree that ERISA does not consider as a fiduciary an entity such as a bank when it does no more than receive deposits from a benefit fund on which the fund can draw checks. The allegations in the amended complaint, however, do not describe W ettlin's role as so circumscribed. Rather, the amended complaint alleges that the Board delegated to defendant the "day to day responsibility to control, manage, hold, safeguard, and account for the Fund's assets and income."

Moreover, the contract provides that Wettlin is to "[r]eceive request for benefits fr om employees and take appropriate action thereon." Notably lacking in the record is a description of the various benefits that ar e available and what actions the parties have considered to be "appropriate."

At this stage we are left with substantial doubt that there exist no facts that might establish that Wettlin did indeed exercise such authority and control over the management and disposition of Local 6 Fund assets so as to come within the statutory definition of a fiduciary. Further development

9

is required and on this recor d we cannot say that, as a matter of law, Wettlin is not a fiduciary. The amended complaint does state a claim and the case should not have been dismissed at the pleading stage.2

The Order of the District Court will be r eversed and the case will be remanded for further proceedings in accordance with this Opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

2. Because the issue was not raised in the District Court, we need not consider the Board's alternative ar gument that Wettlin is nevertheless liable as a party in interest under 29 U.S.C.SS 1106(a)(1)(D) and 1132(a)(3). See Harris Trust and Savings Bank v. Salomon Smith Barney Inc., 530 U.S. ___, 120 S.Ct. 2180 (2000).