

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-2003

# Srein v. Frankford Trust Co

Precedential or Non-Precedential: Precedential

Docket 01-4516

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"Srein v. Frankford Trust Co" (2003). *2003 Decisions.* Paper 685.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/685

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 13, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4516

RONALD J. SREIN and R. J. SREIN CORP.,
Appellant

v.

FRANKFORD TRUST COMPANY,
n/k/a/ KEY TRUST COMPANY

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 99-cv-2652)
District Court Judge: The Honorable Robert F. Kelly

Argued: September 12, 2002

Before: ALITO and FUENTES, *Circuit Judges,*
and OBERDORFER,* *District Judge*

(Opinion Filed: March 13, 2003)

---

* The Honorable Louis F. Oberdorfer, Senior District Judge for the
District of Columbia, sitting by designation.

JAMES L. GRIFFITH (ARGUED)
JOHN P. HALFPENNY
STEVEN K. DILIBERTO
KLETT, ROONEY, LIEBER &
 SCHORLING
18th & Arch Streets
Two Logan Square, 12th Floor
Philadelphia, PA 19103-2746

*Counsel for Appellant*

MARK D. BRADSHAW (ARGUED)
TODD R. BARTOS
Stevens & Lee
4750 Lindle Road
P.O. Box 11670
Harrisburg, PA 17108-1670

*Counsel for Appellee*s

---

## OPINION OF THE COURT

---

OBERDORFER, *District Judge*:

Plaintiffs' appeal requires us to consider the liability of the trustee of two retirement plans for common law negligence and breach of fiduciary duty, if any, under the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* The District Court entered judgment for defendant under Pennsylvania's Comparative Negligence law after a jury found plaintiff's contributory negligence was greater than defendant's negligence and also found for defendant on the ERISA issue on the theory that the trustee was not a fiduciary within the meaning of that law. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Resolution of this fact specific case requires extensive exposition of them. Findings of the District Court and undisputed evidence establish that:

Ronald J. Srein is the sole stockholder and only employee

of R.J. Srein Corporation. In the mid-1980's, Srein had created in the Corporation two ERISA qualified retirement plans, a Money Purchase Pension Plan and Profit Sharing Plan. In 1993 he sought to invest plan funds in participation agreements on so-called "viatical settlement contracts." A viatical settlement contract is, in essence, an investment in an insurance policy on the life of a terminally ill insured. It allows "individuals diagnosed with potentially terminal diseases . . . [to] obtain an immediate payment of part of the face value of their insurance policy in exchange for assigning all or part of the life insurance policy. This enables the insured [also called "viators"] to obtain money which would otherwise be unavailable to him until after his death. When the insured passes away, the viatical settlement company collects the policy proceeds, pays the investor the money he advanced under the agreement and the balance is divided between the investor and the settlement company in accordance with their agreement." (Finding of Fact No. 3, JA 22.) To arrange these investments, Srein engaged a broker, Craig Silverman and Findco, Inc., to locate "viators" and, for a commission, to negotiate investments in participation agreements.[1] During 1992 and early 1993, Srein entered on his own account six participation agreements for viatical settlement contracts with Findco.

Before February 1993 R. J. Srein Corporation engaged Eagle Retirement and Investment Planning as Trustee of an ERISA qualified Money Purchase Pension Plan. On February 3 of that year, Srein sought to enter into a participation agreement with Findco on behalf of that plan for a 100% interest in an insurance policy issued by Philadelphia Life Insurance Company on the life of one Errol Chamness. However, Eagle "would not allow such investments by retirement plans on which it was trustee because such investments were not registered." (JA 23.) Learning of this impasse, Silverman referred Srein to

---

1. A "Participation Agreement" evidences the rights and duties of the parties including payment to the insured, assignment of the policy to and for the benefit of the investor and the obligation of the insurance carrier to pay the proceeds to the broker for transmittal to the investor after deduction of the commissions.

Laraine Daly,[2] a Frankford trust officer (hereinafter sometimes referred to together as "Frankford"). Frankford informed Srein that "Frankford Trust did not have any rules against non-registered investments, such as participation agreements in viatical settlement contracts, being held in investment plans for which it acted as trustee." (JA 24.)[3] Based on this representation Srein agreed to move his retirement accounts to Frankford.

Frankford then "facilitated setting up qualified ERISA plans for R.J. Srein Corp. at Frankford Trust and transferring assets from Eagle Retirement to Frankford Trust. [Frankford] understood that Mr. Srein was moving the R.J. Srein Corp. Plans to Frankford Trust for the purpose of, among other things, investing in participation agreements on viatical settlement contracts." (Finding of Fact No. 10, JA 24.)

On February 11, 1993, Srein, the Corporation and Frankford entered into five agreements that had the effect of creating a new R.J. Srein Corp. Money Purchase Pension Plan and a Profit Sharing Plan at Frankford. The new Plan documents named Srein as both Participant and Plan Administrator and designated Frankford the Plan trustee. Daly, on behalf of the bank, acted as the trust officer for both of the retirement plans. After creating the Plans, Srein directed Eagle Retirement to liquidate the retirement plans it held and to transfer their assets to Frankford. (JA 1217.)

The Profit Sharing Plan Trust Agreement ("Trust Agreement") between Srein and Frankford as Trustee declared that the Trustee shall "discharge [its] assigned duties and responsibilities . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Trust Agreement § 3.1(b). It continued, "at no time shall any part

---

2. Laraine Daly married prior to the trial and is now Laraine Beckman.

3. An unregistered investment is "a security not registered with the Securities and Exchange Commission and therefore not sold publically unless specific conditions are met." BLACK'S LAW DICTIONARY 1377 (7th ed. 1999).

of the corpus or income of the Fund be used for, or diverted to, purposes other than for the exclusive benefit of Participants or their Beneficiaries, or for defraying reasonable expenses of administering the plan." *Id.* at § 4.1.

The Trust Agreement also provided with respect to investment decisions that Frankford invest the funds of the Plans:

> as directed in writing by the Participant [Srein] . . . which written directions shall be timely furnished to the Trustee by the Plan Administrator [also Srein]. In making any investment of the assets of the Fund, the Trustee shall be fully entitled to rely on such directions furnished by the Plan Administrator and shall be under no duty to make any inquiry or investigation with respect thereto. It is especially intended under the Plan and this Agreement that the Trustee shall have no discretionary authority to determine the investment of the assets of the Fund.

Profit Sharing Plan Trust Agreement § 2.1.

Similarly, the Master Profit Sharing Plan stated:

> In making any investment of contributions under this § 6.3, the Trustee shall be fully entitled to rely on the written directions furnished by the Plan Administrator and shall be under no duty to make an inquiry or investigation with respect thereto. If the Trustee receives any contribution to the Trust that is not accompanied by written instructions directing its investment, the Trustee may hold or return all or a portion of the contribution uninvested without liability for loss of income or appreciation pending receipt of proper investment directions from the Plan Administrator.

Master Profit Sharing Plan § 6.3(c). That Plan further stated that "the assets of the Plan are held, administered and managed by the Trustee [Frankford] in accordance with the terms and conditions of the Trust Agreement," § 1.1, and that "the Trustee shall have the sole responsibility for the administration of the trust and the management of the assets held hereunder, as specifically provided in the Trust

Agreement." Master Profit Sharing Plan § 10.1. The Master Money Purchase Plan had identical language in § 11.1.

In consideration for acting as trustee of the Corporation's Plans, Frankford was to be "compensated for its services in accordance with its normal schedule of fees." *See* Trust Agreement § 5.1. Frankford charged fees based upon the value of the assets held by the Plans. (JA 118.) As Daly explained "all trust accounts were charged a fee. In the case of employee benefit accounts, it would have been for use of the prototype plan document, the — having a financial institution as trustee . . . . It also, in Srein's case, because we were acting as a directed trustee, it involved maintaining the security record, maintaining the document in the vault and producing . . . monthly statements of transactions and assets . . . ." (JA 1306.)

During the pendency of the Trust relationship between Frankford and the Plans, Srein entrusted to Frankford two Participation Agreements; one representing an interest in the Chamness policy and another in an insurance policy on the life of one J. Lloyd Madsen.

## A. The Chamness Policy

On February 11, 1993, Srein, as Plan Administrator, directed Daly to forward $72,500 from the Money Purchase Pension Plan to Findco's escrow agent, Neil Katim, to invest in a Participation Agreement for a 100% interest in the Chamness policy. As instructed, Frankford forwarded the $72,500 to Findco's escrow agent, who paid it to Chamness. (JA 1569.) Pursuant to the Agreement, Chamness conveyed the policy, including a right to its proceeds to Findco.

The Agreement's terms required Findco to obtain an insurance change of beneficiary form from Philadelphia Life "naming the Escrow Account and the Participant as the proportional, percentage, irrevocable beneficiaries of the Policy . . . ." (JA 1569.) Findco failed to do so. Meanwhile, Frankford placed the Agreement in its vault and assigned it an "arbitrary, random number[ ]" because "the participation agreements were not registered investments, [and] they did not have pre-existing numbers assigned to them." (JA 25.) Then, on February 17, 1993, unbeknownst to either Srein

or Frankford, Findco entered into a second participation agreement with D.P. Partnerships for a 100% interest in the same Chamness policy. (JA 25.)

After Chamness passed away, on August 31, 1994, Philadelphia Life forwarded the proceeds of that policy to Findco's escrow agent. At Findco's direction, the escrowee divided the net proceeds from the Chamness policy between D.P. Partnership and Findco (for its commission); Srein's Plan received nothing. (JA 738.) Nevertheless, Frankford, apparently oblivious of Chamness' death and the distribution of the policy proceeds to D.P. Partnership, continued to list the Chamness policy as an asset of the Srein Money Purchase Plan and continued to charge the Plan a trustee fee based upon the value of that asset through the year 1999. (JA 119, 1123.)

### B. The Madsen Policy

On June 3, 1993, Findco and "the Frankford Trust Company, Trustee, F.B.O. the R.J. Srein Corp. Profit Sharing Plan," entered into a Participation Agreement for a 100% interest in an insurance policy issued by American National Insurance on the life of J. Lloyd Madsen. (JA 1575.) Daly signed the Agreement as trust officer for the Profit Sharing Plan; Srein signed on behalf of the Plan. As instructed by Srein, acting in his capacity as Plan Administrator, Frankford paid $62,500 from the Profit Sharing Plan for the investment in the Participation Agreement. (JA 711, 716.) As a result of the assignment of random numbers to the Agreements, Frankford had no ability to determine whether more than one customer of the bank invested in a Participation Agreement for the same viatical settlement contract. (JA 25.)

The terms of the Madsen Agreement were essentially the same as those set forth in the Chamness Agreement. It obligated Madsen to assign to Findco ownership of the policy on his life and Findco to obtain an insurance change form from American National naming it and the Srein Profit Sharing Plan as beneficiaries of the policy. Findco, as with the Chamness policy, failed to name the Srein Plan as beneficiary. Again, Frankford assigned the Participation Agreement a random number and placed it in its vault. (JA

25.) Sixteen months later, on October 28, 1994, Frankford was also serving as trustee for the Stephan Matt Richards' retirement plan ("Richards' Plan") with Daly serving as the trust officer. On that date, on instructions from that Plan, Frankford paid $23,030 of the plan's funds to purchase a 28% interest in the same Madsen policy with respect to which it held the Srein Plan Participation Agreement. (JA 403.) Daly signed the Richards' Participation Agreement as "Trustee, FBO Stephen M. Richards." (JA 397.) Although Frankford, and specifically Daly, was the trustee for both plans, the District Court found that "due to the sixteen and a half month gap between the two purchases and the fact that the agreements did not have preexisting numbers assigned to them since they were unregistered investments, Frankford did not recognize the two purchases of the same policy." (JA 16.)

On May 29, 1995, Lloyd Madsen died; American National promptly delivered to Silverman $27,499, the policy proceeds for "Frankford Trust Co. FBO S.M. Richards . . . & Findco, Inc., Craig Silverman, assignee." (JA 409.) Silverman forwarded to Frankford the American National check designating it for the Richards' Plan. (JA 407.) "Frankford Trust did not recognize that these proceeds related to the same Madsen policy, in which the R.J. Srein Corp Profit Sharing Plan had taken a 100% interest." (JA 27.) Daly deposited the check into the Richards' Plan account; the Srein Plan received none of the proceeds of the Madsen policy. Moreover, as in the Chamness case, Frankford continued to list the Madsen policy as an asset of the Srein Profit Sharing Plan and continued to charge it fees until 2001. (JA 118-119.) During the pendency of the trust relationships, Frankford charged the Srein plans approximately $7,000 in trustee fees based on the value of the Chamness and Madsen Participation Agreements. (JA 1014, 1021.)

In early 1997, Srein, having had no return on his six pre-1993 personal investments in Participation Agreements for viatical policies as well as those made by the Plans for which Frankford was trustee, became suspicious of Silverman and Findco. After some investigation, Srein discovered that Silverman had been selling Participation

Agreements for investments in the same viatical policies to more than one investor. Ultimately, in June 1997, Srein and Frankford jointly sued Silverman, Findco, and Findco's escrow agent for fraud. Srein won a judgment in excess of two million dollars. However, by that time, Findco and the other defendants were insolvent and the judgment uncollectible. Srein then instituted the instant action against Frankford in the District Court.

After a trial on the merits a jury returned a special verdict that defendant was negligent causing $566,000 in damage to plaintiffs (a $66,000 loss by the Profit Sharing Plan for the Madsen policy and $500,000 for losses by Srein from personal viatical investments) but that Srein's negligence was a seventy percent contributory cause of the losses. Applying the Pennsylvania Comparative Negligence Act,[4] the District Court rendered a judgment for defendant on the negligence claim.

That court also ruled, consistently with the verdict of the jury serving in an advisory capacity, that Frankford was not a fiduciary because it was a directed trustee. Emphasizing that Frankford had exercised no discretion and provided no investment advice, the District Court entered judgment for defendant on the ERISA claim.

On appeal, Appellants argue that Frankford functioned as a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i) of ERISA because, as trustee, it exercised "authority and control" over the management and disposition of the ERISA plans' assets.[5] Appellants also

---

4. Under the Pennsylvania Comparative Negligence Act a plaintiff is entitled to a proportionate share of the damages only when his contributory negligence does not exceed fifty percent. *See* Comparative Negligence Act, 42 Pa. C.S. 7102(a).

5. 29 U.S.C. § 1002(21)(A) states that a person functions as an ERISA fiduciary to the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan *or exercises any authority or control respecting management or disposition of its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan (emphasis added).

contend that the district court erred when it applied Pennsylvania contributory negligence laws to the common law claims.

## II. DISCUSSION

### A. The ERISA Claims

#### 1. *Standard of Review*

The parties disagree at the threshold about the proper standard of review to apply to the District Court's decision that Frankford Trust was not an ERISA fiduciary. Plaintiffs argue that the fiduciary status issue is a legal question that we review *de novo*. Frankford conversely argues that the issue before us presents a mixed question of law and fact for which appellate courts review only the legal conclusions *de novo*; factual findings survive unless clearly erroneous. *See Scully v. US WATS*, 238 F.3d 497, 505 (3d Cir. 2001). Here, Plaintiffs accept the underlying factual findings regarding the agreements entered and actions taken by Frankford pursuant to the Plan and Trust Agreements; they dispute only whether or not the District Court properly determined that those agreements and actions impose fiduciary status on Frankford. Given that only legal issues are raised on appeal, we review the district court's legal conclusion *de novo. See id.*; *see also Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001) ("Where the facts are not in question, a party's status as an ERISA fiduciary is purely a question of law"); *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut.*, 982 F.2d 1031, 1034 (6th Cir. 1993) (whether a plan administrator is a fiduciary is a question of law).

#### 2. *Frankford's Fiduciary Status*

"ERISA 'defines fiduciary not in terms of formal trusteeship, but in functional terms of control and authority over the plan . . . .' " *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). ERISA creates liability for breaches of fiduciary duty "to the extent" that a person functions in a fiduciary capacity. 29 U.S.C. § 1002(21)(A); *see also Glaziers & Glassworkers Union Local No. 252 v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1180 (3d Cir. 1996).

Fiduciary status attaches to a person managing an ERISA plan under subsection (i) of § 1002(21)(A) if that person exercises discretion in the management of the plan, *or* if the person exercises any authority or control over the management or disposition of the plan's assets. *See Bd. of Trs. of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs. Inc.*, 237 F.3d 270, 273 (3d Cir. 2001). This Court recognizes that the "significant difference between the two clauses [of subsection (i)] is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets." *Id.*; *see also IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997). It has been well said that "[f]iduciary status under § 1002(21)(A) is not an all or nothing concept . . . [A] court must ask whether a person is a fiduciary with respect to the particular activity in question." *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir 1994), *cert. denied*, 514 U.S. 1111 (1995) (internal quotations omitted).

Here, we accept, as we must, the District Court finding that Srein directed, and Frankford exercised no discretion with respect to, the decisions to invest in the Participation Agreements for the Madsen and Chamness policies. But it is obvious that Srein did not direct the placement of the several agreements in the Frankford vault without cross-referencing one to the other, the assignment of random numbers to the agreements, or the payment for and acceptance of participation agreements for other Frankford customers with respect to a policy already the subject of one of R.J. Srein Corporation's participation agreements.[6]

---

6. Frankford recognized that Srein is "sophisticated in commercial finance matters". (JA 1568.) In Srein's informed, if not expert, opinion, Frankford "should have had a mechanism to track the assets regardless of what the assets were. And again that the representation to me that they could administer X trustee [sic] for unregistered or unusual investments should not, as far as I'm concerned doesn't mitigate or didn't mitigate their responsibility to properly register or cross reference those types of investments, whether they were mortgages, private stock offerings, viatical contracts, its irrelevant. Assign a number to the asset

Nor did Srein direct Frankford to accept and distribute to the Richards' plan twenty-eight percent of the proceeds of the Madsen policy. Without inquiry or investigation, Frankford came to know that Madsen died. Proceeds of the policy on his life came into its possession. It was in "control" of those proceeds and, for whatever reason, erroneously distributed them to another of its customers. That was, by any definition, the exercise of "control"[7] (if not "authority") respecting "disposition of [plaintiff's] assets." In this case Frankford exercised direction over the Madsen policy when it placed that asset in the Richards' plan account, and therefore, diverted the value of that asset from the Srein Plan account.

We conclude as a matter of law that the facts found by the District Court establish that Frankford exercised undirected "authority and control" over plaintiffs' valuable interests in the Madsen life insurance policy and therefore functioned as a fiduciary with respect to the Srein Plan's interests in the Madsen policy.

We find strong support for this conclusion in the Sixth Circuit's decision in *Smith v. Provident Bank*, 170 F.3d 609 (6th Cir. 1999). The *Smith* court found that a directed trustee acted as an ERISA fiduciary to the extent that it exercised control over plan assets. In that case, Provident Bank, as trustee for two benefit plans, had no authority to make investments for the plans unless directed to do so by the plan fiduciary, Robert Stauter. In 1990, Stauter instructed Provident to purchase approximately $10,000 worth of Ameritrust stock, and to hold that stock in trust for the plan. As instructed, Provident made the purchase

and if it comes up in the system somewhere else than there's a problem. It's like a registration of a bond." (JA 1232.) Srein does not claim that Frankford should have investigated and discovered the Findco fraud. Srein explained that he believed Frankford should have known from information in its own files and "alerted [him] to the fact that there had been a double sale of one of the policies [he] had a double interest in [as Plan Participant and Plan Administrator]." (JA 1233.)

7. "Control" is "the act or power of controlling; regulation; domination or command," and "controlling" is defined as "exercising restraint or direction over." Webster's Unabridged Dictionary 442 (2d ed. 1998).

and recorded the stock acquired in the account for the plan. A second trust client of Provident, the Catholic Archdiocese of Cleveland, also instructed the bank to purchase $10,000 worth of Ameritrust stock. Provident failed to purchase the stock for the Archdiocese. Subsequent to these transactions, Stauter removed Provident as plan trustee and directed it to transfer the plan's assets to a new trustee, Society Bank. To "correct" its original mistake, Provident placed the Ameritrust shares into the account of the Archdiocese, and delivered to the new trustee of the Stauter plans ten thousand dollars in cash. The *Smith* court held that Provident functioned as fiduciary for the Stauter plan when it removed the Ameritrust shares from the plan account and placed them elsewhere. *Id.* at 613-614.

Defendant's reliance on the *Beddall* and *Maniace* cases, from the First and Eighth Circuits respectively, is misplaced. In each of those cases the plaintiff attempted to state a claim against the trustee bank for actions taken (or not taken) clearly at the direction of another. In *Maniace*, the plaintiffs charged that the defendant bank violated a fiduciary duty to the plaintiff's Employee Stock Ownership Plan because it improperly retained a plan owned stock as its value declined. *See Maniace*, 40 F.3d at 267. The *Maniace* court explained that the bank was specifically directed to retain employer stock in the ESOP plan by a committee authorized to give such a direction. Therefore, it had neither discretionary authority, nor control of that plan asset. *Id.* Similarly, in *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998), Plan documents placed in an investment advisor responsibility for determining the value of plaintiff's retirement plan assets. The First Circuit concluded that the appointment of the investment advisor divested the bank of any control or authority over the valuation of the plan's investments. *Id.* at 21.

In reaching our conclusion we have considered whether Frankford was a mere custodian of plan assets. We recognize that "ERISA does not consider as a fiduciary an entity such as a bank when it does no more than receive deposits from a benefit fund on which the fund can draw checks." *See, e.g.*, *Wettlin*, 237 F.3d at 275; *see also Brandt*

*v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982) (non-trustee bank acting as mere custodian of funds not liable for failing to prevent plan trustee's embezzlement). However, in this case, Frankford acted as more than a "plain vanilla" custodian of assets. Frankford charged Srein a fee, in part, for "having a financial institution act as trustee." (JA 1306.) As trustee, Frankford made representations to Srein regarding its ability and willingness to manage plans holding unregistered investments after the then-incumbent trustee declined to do so. These factors, together with Frankford's actual control of the Madsen policy assets, lead us to the conclusion that Frankford was more than a mere custodian of assets performing only administrative and ministerial duties.

Neither *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F. 3d 715, 722 (9th Cir. 1997) nor *Beddall*, cited by the dissent, require a different result. In each of those cases the banks in question performed no more than administrative responsibilities at the direction of a plan trustee. Neither bank took on the responsibility of acting as a trustee, directed or undirected, for the plan, nor solicited business from the plaintiffs on the representation that it was sufficiently able to perform such duties. Frankford's functions were not so limited. When, as here, a trustee bank is entrusted with and performs duties to "control, manage, hold, safeguard and account for [a] fund's assets and income," it functions as a fiduciary under ERISA. *Wettlin*, 237 F.3d at 275.

Accordingly, we conclude that the District Court erred in concluding that Frankford was not a fiduciary with respect to the Madsen investment.

A question remains as to whether Frankford was a fiduciary with respect to the Chamness policy. On the one hand, it took custody of the Chamness Participation Agreement, gave it only a random number, maintained a record of it on its books and collected fees long after the insured died and the proceeds were distributed elsewhere. However, Frankford did not exercise control over the Plan's Chamness investment to the extent that it did with respect to the Madsen one. Moreover, Frankford had no duty "to make any inquiry or investigation with respect" to whether

Chamness was alive. *See* Trust Agreement § 2.1. Nor did it have "in-house" information (as it did with respect to the Madsen investment) about the double sale of that policy to the D.P. Partnership plan. We conclude that Frankford was not a fiduciary with respect to the Chamness Participation Agreement or the policy interest which it evidenced.

### 3. Breach of Fiduciary Duty

ERISA imposes upon a fiduciary the duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(B). The District Court never reached this fact intensive issue. Accordingly, we remand to the district court the question of whether Frankford's actions, and inactions, with respect to the Madsen investment amounted to a breach of fiduciary duty and, if so, the consequences of the breach.

## B. Appellants' Negligence Claim

In addition to its claim for damages resulting from Frankford's breach of fiduciary duty, plaintiffs brought a claim for negligence under Pennsylvannia law with respect to Srein's personal investments and those of the two plans. The jury found that Frankford was negligent with respect to the Madsen policy and for Srein's personal investment losses. (JA 538.) However, the jury found no negligence with respect to Frankford's role with respect to the Chamness policy. (JA 540.) It further determined that Srein suffered $566,000 in damages but that Srein was a 70% cause of those damages. (JA 539.) The District Court applied Pennsylvania's Comparative Negligence Act to the jury's verdict and entered judgment for Frankford on the negligence claims.

Plaintiff moved for a new trial after judgment arguing, first, that there was insufficient evidence to support a finding that Srein was guilty of contributory negligence with respect to his investment losses, and second, that the District Court erred in failing to instruct the jury that, under the Pennsylvania Comparative Negligence Act, a finding that Srein was more than fifty percent at fault for

his losses would require the court to enter a judgment in favor of the defendant.[8] The District Court denied that motion.

1.  *Jury Instruction*

Plaintiffs' claims for negligence were traversed by the defense of contributory negligence. Under the governing Pennsylvania Comparative Negligence Act, a verdict that a plaintiff was more than fifty percent at fault requires the trial court to enter a judgment for the defendant. Pennsylvania courts have modulated the rule to the extent of requiring a judge trying a case governed by Pennsylvania's law to include in a jury charge information to that effect. *See Peair v. Home Ass'n. of Enola Legion No. 751*, 430 A.2d 665, 671 (Pa. Super. Ct. 1981).

Here the District Court instructed the jury that "[i]f you find that . . . the plaintiff was contributorily negligent and that the plaintiff's contributory negligence was a substantial factor in bringing about plaintiff's own harm, *the fact that the plaintiff was contributorily negligent will not bar recovery by the plaintiff*. But any damage sustained by plaintiff will be diminished in proportion to the amount of the negligence attributed to the plaintiff." (JA 1133-34) (emphasis added). Furthermore the judge never told the jury that if it attributed fifty percent or more of the blame for plaintiff's injury upon that plaintiff, the judge would enter judgment for the defendant. This instruction was plainly wrong for what it said, and for what it didn't say. Although plaintiff failed to object to the instruction and omission before the court charged the jury, the plain error

8. On appeal plaintiffs also raise for the first time the argument that the District Court erred in applying Pennsylvania's Comparative Negligence Act in this case because that Act applies only to "actions brought to recover damages for negligence resulting in death or injury to person or property . . . ." 42 Pa. Cons.Stat. Ann. § 7102(a). We have consistently held that we will not consider issues that are raised for the first time on appeal absent "compelling reasons." *Patterson v. Cuyler,* 729 F.2d 925, 929 (3d Cir. 1984); *see also Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994). Plaintiffs identified no such reasons and accordingly we decline to address the contention.

requires us to take cognizance of it and act. *See Alexander v. Riga*, 208 F.3d 419, 426-27 (3d Cir. 2000).[9]

### 2. *Sufficiency of Evidence*

We review for clear error the determination of the District Court that there was sufficient evidence of contributory negligence. *See Scully v. US WATS*, 238 F. 3d 497, 505 (3d Cir. 2001). Srein, administrator of the Plans, was by all accounts a sophisticated investor. He received periodic reports about both his personal, and the Plans', viatical investments. Several years elapsed before he noticed that these investments had not "matured." It was not unreasonable for the trier of fact, governed by a comparative negligence law and instruction, to allocate some blame to him.

## III. CONCLUSION

We reverse the judgment of the District Court on the plaintiffs' negligence claim and remand for new trial. We also reverse its decision that defendant was not a fiduciary and remand the case for further consideration of plaintiffs' claim that defendant breached its fiduciary duty with respect to the plan's interest in the Madsen policy.

---

9. However, we note that the defendant raised the question of whether ERISA preempted the negligence claim during a pretrial conference before the District Court. The District Court apparently failed to rule on the contention. On remand it may wish to revisit the preemption issue before it undertakes any new trial. *See The 1975 Salaried Retirement Plan For Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992), *cert. denied,* 506 U.S. 1086 (1993) (explaining that preemption applies when a state law claim depends on the existence of an ERISA plan).

FUENTES, *Circuit Judge*, concurring and dissenting:

I join all portions of the majority's well-reasoned opinion other than Part II, subsection (A)(2). I write separately because I do not agree with the conclusion that Frankford functioned as a fiduciary with respect to the Srein Plan's interest in the Madsen policy.[1] Therefore, I respectfully dissent from that portion of the majority's decision.

In establishing a retirement plan for R.J. Srein Corp., Ronald Srein, a college graduate, successful businessman, and sophisticated investor, negotiated four separate agreements with Frankford. According to the documents, Srein had the authority to control and manage the operation and administration of the Srein Plan. Indeed, he was identified in the documents as both the "plan administrator" and "plan fiduciary." Frankford, on the other hand, was authorized only upon written direction from Srein to pay benefits and expenses from the Plan's funds; make investments on behalf of the Plan; and allocate contributions under the Plan to the participants. Frankford was identified as the "plan trustee."

I agree with the District Court that under the four Srein Plan documents "the role of Frankford was of a limited nature as Frankford was to exercise no investment discretion, and Srein was solely responsible for selecting the investments for the plans." (D. Ct. Op. at pp. 4) I also agree with the District Court's observation that Frankford's intended role was that of directed trustee, rather than fiduciary. *Id.* at 10-12.

Notwithstanding the nature of the contractual duties set forth in the Plan documents, the majority, citing *Board of Trs. of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs. Inc.*, 237 F.3d 270 (3d Cir. 2001), notes that an entity may be found to be a fiduciary when it is entrusted with duties to "control,

---

1. The majority analyzed the two viatical investments made by the Srein Plan through Frankford separately. I agree with the majority's conclusion that Frankford's handling of the Chamness policy did not create fiduciary status. I limit my comments, therefore, to the majority's analysis of Frankford's handling of the Madsen policy.

manage, hold, safeguard, and account for a fund's assets and income." I note, however, that where the duties entrusted to an entity are merely ministerial, fiduciary status may be inappropriate. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 20 (1st Cir. 1998) ("Without more, mechanical administrative responsibilities (such as retaining the assets and keeping a record of their value) are insufficient to ground a claim of fiduciary status."); *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 722 (9th Cir. 1997) ("Having to make a decision in the exercise of a ministerial duty does not rise to the level of discretion required to be an ERISA fiduciary.").

Here, as the District Court found, the evidence presented leads to the conclusion that Frankford was entrusted with duties that were merely ministerial. The Plan documents stated that Frankford had no duty to make any inquiry or investigation with respect to the instructions from Srein and had no discretionary authority to determine investments for the assets of the fund. It is clear that Frankford was entrusted with less authority than the entity in *Wettlin* in determining whether to disburse benefits. *C.f. Wettlin*, 237 F.3d at 275 ("[T]he contract provides that Wettlin is to '[r]eceive request for benefits from employees and take appropriate action thereon,'" without clarifying what action should be taken.). Accordingly, on the spectrum of duties a bank might be entrusted to perform, I agree with the District Court that Frankford's duties were closer to being a depository than a fiduciary.

Nonetheless, I am mindful that a trustee's actual exercise of "any authority or control respecting management or disposition of [a Plan's] assets" could confer fiduciary status under the definition set forth in 29 U.S.C. § 1002(21)(A)(i).[2]

---

2. The full definition of "fiduciary" provided in ERISA is as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee . . . or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

The Supreme Court has observed that ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties. . . ." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis supplied) (citations omitted); *see also Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991) (holding that it is a "person's actions, not the official designation of his role, [which] determine whether he enjoys fiduciary status.")

The majority finds that Frankford exercised "undirected control" (if not actual authority) over the Srein Plan assets when it (1) deposited proceeds from the Madsen policy in the Richards Plan; and (2) failed to develop an effective record-keeping system for viatical investments. Based on these findings the majority concludes that Frankford functioned as a fiduciary.

My disagreement on this point stems from my slightly different interpretation of the second clause of subsection (i) of 29 U.S.C. § 1002(21)(A). This clause confers fiduciary status on those who exercise "any authority or control respecting management or disposition of [plan] assets." I am aware that this clause, unlike the first, does not require an exercise of discretion. *See Wettlin*, 237 F.3d at 272-73. However, I think that the meaning of the determinative words used requires a greater degree of responsibility than was exercised by Frankford.[3] In order to conclude that

---

3. As was set forth above, 29 U.S.C. § 1002(21)(A)(i) confers fiduciary status on those who exercise "any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." The relevant definition of "exercise" as a verb (as it is used in the second clause of subsection (i)) is "to put into action, practice, or use . . . to discharge; perform." Webster's Unabridged Dictionary 677 (2d ed. 1998). The relevant definition of "authority" is "the power to determine, adjudicate, or otherwise settle issues or disputes; jurisdiction; the right to control, command, or determine, [or] . . . a power or right delegated or given." *Id.* at 139. The relevant definition of "control" as a noun is "the act or power of controlling; regulation; domination or command." *Id.* at 442. "Controlling" is defined as "exercis[ing] restraint or direction over." *Id.* "Management" is defined as "the act or manner of managing;

Frankford acted as a fiduciary under the second clause of subsection (i), there must be sufficient evidence that Frankford used its power to direct or command the handling or placement of either the Madsen policy participation agreement or money in the Srein Plan account.

The majority finds sufficient the evidence that Frankford deposited proceeds from the Madsen policy in the Richards Plan account. I disagree that this evidence is sufficient to confer fiduciary status. The Srein Plan owned a 100% interest in the Madsen Policy and the Richards Plan owned a 28% interest in the same policy. After Mr. Madsen died, Frankford received proceeds from Findco on the Madsen policy. Frankford deposited those proceeds in the Richards Plan account. It did so because Findco designated them as payable to that Plan. If Frankford had deposited proceeds designated for the Srein Plan into the Richards Plan account, that would be an example of control over Srein Plan assets. But that is not what happened here. Srein even testified that Frankford never directed money out of the Srein Plan's account without his consent.

The majority finds that Frankford's action in depositing the Madsen policy proceeds in the Richards Plan account is similar to the bank's action in *Smith v. Provident Bank*, 170 F.3d 609 (6th Cir. 1999), which was sufficient to establish fiduciary status. I disagree. In *Smith*, the bank corrected its own accounting mistake by removing shares from one account and moving them to another account on its own initiative, thus demonstrating control over assets. 170 F.3d at 612. Here, however, Frankford did not remove the Madsen Policy from the Srein Plan and move it into the Richards Plan. Frankford simply invested the Srein and Richards Plans' funds as directed by those Plans' administrators and later deposited the Madsen policy

---

handling, direction, or control." *Id.* at 1166. "Disposition" is defined as "arrangement or placing . . . [or] final settlement of a matter." *Id.* at 568. Finally, "assets" are defined as "items of ownership convertible into cash; total resources of a person or business, as cash, notes and accounts receivable, securities, . . ." *Id.* at 125.

proceeds into the Richards Plan account upon receiving them from Findco. It may well be that Frankford's failure to notice that both the Srein and Richards Plans owned an interest in the Madsen policy was negligent, but it does not demonstrate that Frankford exercised any control over Srein Plan assets.

The majority also finds that Frankford exercised "undirected control" on the basis that it failed to develop an effective record-keeping system for viatical investments. Again, I disagree. The majority's holding indicates that Frankford's failure to act has somehow risen to the level of an exercise of authority or control. The bank's failure to act, at most, could be characterized as an omission amounting to negligence, but I fail to see how it is an exercise of authority or control. In any event, even if Frankford had established a record-keeping system for viatical investments, that action would not be an exercise of "undirected control" over the management or disposition of Srein Plan assets. *See e.g. Beddall*, 137 F.3d at 21 ("A financial institution cannot be deemed to have volunteered itself as a fiduciary simply because it undertakes reporting responsibilities that exceed its official mandate."); *Arizona State Carpenters Pension Trust Fund*, 125 F.3d at 722 ("Preparing reports of account activities and determining whether to use a particular format to inform the Trustees of delinquencies do not amount to an assumption of control or authority over the Trust Funds . . . ."). Therefore, the failure to establish a record-keeping system is not evidence of an exercise of authority or control either.

I, therefore, dissent.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*
