Stephanie ERICKSON, et al, Plaintiffs,

v.

ING LIFE INSURANCE & ANNUITY COMPANY, Defendant.

Case No. 1:09–CV–00204–EJL.

United States District Court, D. Idaho.

July 22, 2010.

C. Clayton Gill, Moffatt Thomas Barrett Rock & Fields, Boise, ID, David C. Tarsh-es, Richard J. Birmingham, Davis Wright Tremaine LLP, Seattle, WA, for Plaintiffs.

James D. Larue, Elam & Burke, Boise, ID, William D. Hittler, Nilan Johnson Lewis, Joshua Alexander Bobich, Halleland Lewis Nilan & Johnson, Minneapolis, MN, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

EDWARD J. LODGE, District Judge.

On June 9, 2010, United States Magistrate Judge Larry M. Boyle issued his Report and Recommendation in this matter. (Dkt. 53.) Pursuant to 28 U.S.C. § 636(b)(1), the parties had ten days in which to file written objections to the Report and Recommendation. Plaintiffs filed their objections on June 28, 2010. (Dkt. 54.) Defendant filed its response to the objections on July 8, 2010. The applicable federal rules, local rules and statutes do not provide for a reply to be filed.[1]

Pursuant to 28 U.S.C. § 636(b)(1)(C) this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Moreover, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* In *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz v. United States,* 501

---

1. Fed.R.Civ.P. 72(b)(2); Dist. Idaho Loc. Civ. R. 72.1(b); and 28 U.S.C. § 636(b)(1).

U.S. 923, 939 [111 S.Ct. 2661, 115 L.Ed.2d 808] (1991) (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See United States v. Ciapponi,* 77 F.3d 1247, 1251 (10th Cir. 1996) ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz,* 501 U.S. at 937–39 [111 S.Ct. 2661] (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis,* 416 F.3d 992, 1000 & n. 12 (9th Cir.2005). Based on the objections filed in this case, the Court has conducted a de novo review of the record pursuant to 28 U.S.C. § 636(b).

## FACTUAL AND PROCEDURAL BACKGROUND

The Court adopts and incorporates by reference the factual background as set forth in the Report and Recommendation on pages 1–4:

Building Materials Holding Corporation (BMHC) is a holding company which provides capital, management and administrative resources to its subsidiaries which provide building materials and residential construction services throughout the United States. *Statement of Undisputed Material Facts Supporting Defendant's Motion for Partial Summary Judgment on Counts One and Two of Plaintiffs' Complaint* (Docket No. 28) (*"DSOF"*), ¶¶ 1 & 3. Plaintiffs to this action include BMHC, as the sponsor and named fiduciary of one of

its retirement plans [2] ("the Plan"), and the other named fiduciaries suing on behalf of the Plan. Defendant is ING Life Insurance & Annuity Company ("ILIAC").

ILIAC entered into a contract with the Plan trustees on behalf of the Plan to provide certain administrative services to the Plan in connection with ILIAC's holding the invested Plan funds in an annuity. *DSOF,* ¶ 1; *Affidavit of Ian Dunn* (hereafter, "Dunn Aff."), Exh. A (hereafter, "Contract") (Docket No. 31). The services included processing contributions to the Plan (*Contract,* § 3.01), allocating contributions according to the express instructions of the Plan's trustees or participants (*id.,* § 3.02), and making payments to the Plan's participants or others as directed "in writing" by the Plan, (*id.,* § 8.06). *See also Plaintiffs' Statement of Facts In Response to ILIAC's Motion For Partial Summary Judgment Filed on January 4, 2010 (Clerks Docket 27),* (Docket No. 37–1) (hereafter, "PSOF"), ¶¶ 1—4.

Under the Contract, ILIAC purchased investments with the contributions it received, as directed by the Plan trustees or participants, from a list of options pre-selected and approved by the trustees, and maintained individual record-keeping accounts for each Plan participant. *See Contract,* § 3. If ILIAC received a contribution, but no allocation instructions, the Contract provided that ILIAC would return the contribution. *Contract,* § 3.02.

Once Plan contributions were transmitted to ILIAC, the funds were held in open-ended mutual funds in the invest-

---

2. The name of the plan involved in this case is BMHC 401(k) and Saving Plan, but the named plaintiff is BHMC BMCC Employees Savings & Retirement Plan for reasons which remain unclear to this court but are not at issue in this motion. For the sake of avoiding confusion, the Court will refer only to "the Plan."

ment market. *Dunn Aff.*, Exh. C; *PSOF*, ¶ 3. The Plan trustees and participants did not have direct access to the funds. *PSOF*, ¶¶ 1—4. ILIAC was the sole signatory on the Plan accounts, and had the exclusive authority to write checks on the accounts to make the payments or invest the funds as directed by the trustees or Plan participants. *Id.* The Contract provided, however, that the trustees directed all distributions, and could terminate the Contract at any time. *See Contract*, § 5.06

ILIAC made payments to itself for its administrative fees which were predetermined by formula set forth in the Contract on a quarterly basis. *PSOF*, ¶ 5.

The Contract specifically stated that ILIAC was "not the Plan administrator or the fiduciary and has no discretion or control over the Plan or its assets." *Contract*, § 2.01.

The Plan trustees, on behalf of the Plan, also signed several other documents in conjunction with the Contract:

- the "ING MAP Plus Contract Charges, Compensation, Disclosure, Fund Selection, and Plan Administrative Support" document which listed the administrative support services ILIAC agreed to provide under the Contract including certain record keeping services, (*Dunn Aff.*, Exh. C) (hereafter, "Administrative Support Document");
- a Contract Services Agreement whereby the Plan elected the accounts to create at ILIAC and how funds would be transferred by the Plan to those accounts, (*Dunn Aff.*, Exh. D);
- an Application for Group Annuity Contract, (*Dunn Aff.*, Exh. E); and
- a Third Party Administrator (TPA) Payment Request establishing Pinnacle Pension Services of Boise, Idaho as the Plan's third party administra-

tor, and directing ILIAC to distribute a predetermined fee to Pinnacle out of the Plan assets; (*Dunn Aff.*, Exh. F). *See also PSOF*, ¶ 6.

In early January 2008, Plan representatives began discussions with ILIAC regarding the Plan's intent to terminate its Contract with ILIAC and to transfer the Plan's funds to Prudential. ILIAC representatives worked with the trustees and Prudential to accomplish the transfer. *See Dunn Aff.*, Exhs. G, I—K; *Supplemental Affidavit of Ian Dunn*, Exh. H (Docket No. 40–1); *PSOF*, ¶ 9. On April 28, 2008, Stephanie Erickson, a named Plan trustee, directed ILIAC to "liquidate the assets in all of the plans . . . and wire the proceeds to Prudential on May 1, 2008 using the wire instructions [enclosed]." *Dunn Aff.*, Exh. M. "[T]he trustees, the participants and Prudential were dependent on ILIAC to make the transfer." *PSOF*, ¶ 7.

On May 1, 2008, ILIAC entered the wire transfer on 2:22 pm, it was approved at 2:22 pm, and "the funds were released from ILIAC's control at 3:59 pm EST." *DSOF*, ¶ 17; *Dunn Aff.*, Exh. N. Prudential received the Plan funds at 4:26 pm EST. *DSOF*, ¶ 17; *Compl.* ¶ 26.

Plaintiffs claim that because Prudential did not receive the Plan funds of approximately $104 million by 4:00 pm EST, the Plan lost in excess of $375,790.16 in gains it would have otherwise realized from the market on May 1st. *Dunn Aff.*, Exh. O. Plaintiffs allege claims for relief for breach of fiduciary duty under several provisions of ERISA and under Idaho state law, negligence, promissory estoppel and breach of contract. Defendant seeks partial summary judgment in its favor on Plaintiffs' ERISA claims only. Specifically, ILIAC moves for summary judgment on Plaintiffs' first two causes of action which allege breach of fiduciary duty

under (1) sections 404 and 502(a)(2), and (2) sections 404 and 502(a)(3) of ERISA.

In the Report and Recommendation, Judge Boyle recommends that ILIAC's motion for summary judgment be granted. Judge Boyle determined that, as a matter of law, ILIAC was not a fiduciary for the purpose of the transfer of Plan assets to Prudential. Plaintiffs object to the Report and Recommendation and argue that Judge Boyle failed to give sufficient weight to controlling Ninth Circuit case law that would require the Court to find that ILIAC acted as a fiduciary. The Court will address this objection.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,'

since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.[3]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the

---

**3.** *See also,* Rule 56(3) which provides, in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## OBJECTIONS

The Plaintiffs argue that the Ninth Circuit's holding in *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415 (9th Cir.1997) that " '[a]ny' control over disposition of plan money makes the person who has the control a fiduciary" mandates that the Court find ILIAC a fiduciary. *Id.* at 1421. Plaintiffs' contention that ILIAC acted as a fiduciary is critical because "[f]iduciary status is the key to unlocking ERISA's civil-enforcement scheme." *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir.2006). If Plaintiffs cannot prove that ILIAC is a fiduciary as a matter of law their ERISA claims necessary fail. The facts in this case are essentially uncontested, and therefore summary judgment is proper.

For the purposes of ERISA, Congress had defined a fiduciary as:

> (21) (A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). In their objection Plaintiffs assert only that ILIAC should be considered a fiduciary based on (i). (Pl.'s Objection to Report and Recommendation at 2, Dkt. 54.) Specifically, Plaintiffs point to the language that "a person is a fiduciary with respect to a plan to the extent (i) he exercises [ . . . ] any authority or control respecting management or disposition of its assets." *Id.* Plaintiffs contend that this section of the statute should be construed as broadly as possible such that ILIAC's power to write checks would automatically confer fiduciary status on it.

Plaintiffs rely heavily on the Ninth Circuit's analysis in *IT Corp.* In that case the defendant served as a third party administrator for an ERISA plan and had the authority to collect contributions and to pay them out to participants. *IT Corp.*, 107 F.3d at 1418. The defendant had the authority to determine whether a claim was doubtful or not, and if it was such claims were to be referred to the trustee. *Id.* The defendant was sued by the trustees for paying out $600,000 dollars to an ineligible party. *Id.* The defendant argued that by the very terms of the contract it could not be a fiduciary. The Ninth Circuit, however, rejected this argument and found that "ERISA defines fiduciary not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties-and to damages-under § 409(a)." *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)) (emphasis in original). Based on this interpretation the Ninth Circuit not only found that the defendant was a fiduciary under § 1002(21)(A)(i) because it exercised discretion in determining which claims were doubtful; but also because "as a practical matter, a substantial amount of money would be under the control of [defendant], in the form of a bank account which it could deplete by writing checks."

*Id.* at 1421. Plaintiffs here argue that ILIAC was in an analogous position.

ILIAC argues that its position is more analogous to the defendant in *Arizona State Carpenters Pension Fund v. Citibank*, 125 F.3d 715 (9th Cir.1997). In that case the defendant bank's duties were as a "depository and custodial agent" which mean it was responsible for receiving and paying out trust fund money as directed by the trustees, holding trust fund investments, investing and reinvesting funds as directed by the trustees, and for furnishing daily reports about the fund. *Id.* at 718. The plaintiff in that case brought suit over the reporting requirement and argued that this reporting requirement conferred on the defendant bank discretionary control sufficient to trigger fiduciary status under § 1002(21)(A)(i). *Id.* at 721–22. The Ninth Circuit disagreed. *Id.* at 722. The Ninth Circuit never considered the question of whether the defendant bank, as the holder of the plan's funds, was a fiduciary under the authority and control language in § 1002(21)(A)(i). While the defendant bank's functions certainly resemble ILIAC's, *Arizona State* stands only for the proposition that ministerial functions like reporting do not rise to the level of an exercise of discretion. Since Plaintiffs have abandoned the exercise of discretion claim by making no objection to it, *Arizona State* is silent on ILIAC's fiduciary status.

While *Arizona State* is not quite on point, it does speak to a dichotomy between fund holders that the Ninth Circuit has considered relevant when considering a third party administrator's fiduciary status. The Ninth Circuit held in *IT Corp.* that "[t]he right to write checks on plan funds is 'authority or control respecting management or disposition of its assets' [...] requiring that a person with authority to direct payment of a plan's money be deemed a fiduciary." *IT Corp.*, 107 F.3d at 1421. Despite this broad statement, however, the Ninth Circuit carefully walked back this sweeping extension of fiduciary status in two ways. First, the Ninth Circuit noted that if "a fiduciary tells a bookkeeping service to send a check for $950 to Mercy Hospital, the bookkeeping service does not thereby become a fiduciary." *Id.* at 1419. Second, the Ninth Circuit recognized the limited nature of the summary judgment motion before it and held that it "need not decide [...] whether [defendant's] authority to instruct the plan's bank to pay money to the order of drawees makes it a fiduciary as a matter of law." *Id.* at 1422. Based on these two reservations it appears that the Ninth Circuit did not intend to extend fiduciary status to an entity that was acting solely as a third party administrator that moved funds at the direction of plan trustees. Plaintiffs contend that *IT Corp.* stands for the proposition that all entities with the power to write checks be considered fiduciaries, but the Ninth Circuit expressly held that there may be some entities with that power who nevertheless might not be considered fiduciaries.

The Court's task is to determine whether ILIAC, as the entity with the sole power to deplete the plan's funds, would automatically become a fiduciary. The Sixth Circuit in *Briscoe v. Fine*, 444 F.3d 478 (6th Cir.2006) explored the relevant case law pertaining to fiduciary status under ERISA. In that case the plan's account was partially in the defendant's name and the defendant had the duty of processing claims, determining coverage and making payments to eligible employees. *Id.* at 483. The defendant's only financial role was to advise the company on how much money needed to be in the account to cover payments under the plan. *Id.* When the company terminated its relationship with the defendant funds remained in the bank account. The defendant appropriat-

ed to itself some of those funds to pay its administrative fee and returned the rest to the company. *Id.* at 484. When suit was brought on the basis of these unauthorized transactions the defendants made the argument that it was acting pursuant to its contract with the company. *Id.* at 492. The court rejected this argument and found that while the "terms of the Agreement may have limited [defendant's] *discretion* over the remaining funds, but did not affect its control over those funds." *Id.* Accordingly, the defendant was found to be a fiduciary to the extent of that transfer because they "acted as a signatory and *unilaterally* disposed of the remaining funds." *Id.* This element of acting unilaterally appears in every case that *Briscoe* considers.

The Court has found no authority which supports the Plaintiffs' argument that a third party administrator acting solely at the direction of the trustees was subject to fiduciary status. In *David P. Coldesina, D.D.S. v. Estate of Simper,* 407 F.3d 1126 (10th Cir.2005) a third party administrator wrote checks to the plan's investment advisor at the advisor's direction, thereby depleting plan funds. *Id.* at 1130. The court found that the third party administrator was a fiduciary because it exercised its authority and control over plan assets by writing checks and rejected their argument that they were merely following the investment advisor's orders. *Id.* at 1135. The court held that there "were never any express plan policies direct[ing] [third party administrator's] check writing activities, and [plaintiff] was unaware [third party administrator] was writing the checks to [investment advisor]. As such, [third party administrator] assumed control over disposition of the funds by exercising his own judgment rather than acting at the plan's direction." *Id.* at 1134. The court found that the third party administrator could not defend itself by claiming that it relied on the investment advisor's instruc-

tion because the agreement was with the plan, and the investment advisor had no authority over it. *Id.* at 1135. The Tenth Circuit seems to indicate, then, that had the third party administrator been writing checks pursuant to a directive from the plan or its trustees, it would not have assumed authority and control over the plan's assets.

Other courts have followed the Tenth and Sixth Circuits in this interpretation. In *Board of Trustees and Bricklayers and Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Associates,* 237 F.3d 270 (3rd Cir.2001) the defendant was tasked with collecting employer contributions to the fund. *Id.* at 271. Ninety eight percent of those funds were to be directed towards a specific entity while the remaining two percent would become an asset of the plaintiff's fund. *Id.* at 272. When the agreement was terminated, the defendant kept the remaining two percent for itself. *Id.* The court found that the defendant could be considered a fiduciary under these facts because it exercised authority and control over the plan funds. *Id.* at 275. In *Trustees of So. Ca. Bakery Drivers Security Fund v. Middleton,* 474 F.3d 642 (9th Cir.2007) the defendant retained funds that had been paid into its plan after the agreement with the employer had terminated. *Id.* at 644. The Ninth Circuit concluded that this action was sufficient to establish the necessary exercise of authority and control required of an ERISA fiduciary. *Id.* at 646.

■ The case that most clearly illustrates this principle, however, is *LoPresti v. Terwilliger,* 126 F.3d 34 (2nd Cir.1997). In that case, two brothers, both with the equal authority over their company's plan assets, were sued by the participants because one of the brothers, Donald, had used plan funds to pay out other creditors. *Id.* at 37. The Second Circuit held that

because of this action Donald was an ERISA fiduciary for his exercise of authority and control over plan assets. *Id.* at 40. However, the other brother, who had the exact same authority as Donald but who did not write any checks, could not be considered a fiduciary because he had not exercised authority or control over plan assets. *Id.* at 40–41. It is clear, then, that fiduciary status does not merely arise because an entity has some authority or control over plan assets, it requires an exercise of that authority or control on the entity's own initiative.

Plaintiffs contend that this reading of § 1002(21)(A)(i) re-injects a discretionary requirement that Congress explicitly left out of the exercise of authority and control language. While the Plaintiffs are correct in asserting that Congress did not impose a discretion requirement, they misread the purpose of the statute. The D.C. Circuit made this clear in *Chao v. Day,* 436 F.3d 234 (D.C.Cir.2006). In that case the contract between the defendant and twenty four ERISA plans was that they would pay him a fee and he would purchase insurance for the plans. *Id.* at 235. Rather than purchasing insurance, however, the defendant pocketed the money and provided the plans with fake insurance policies. *Id.* The defendant argued that he could not be a fiduciary because by the terms of his contract he did not have the discretionary authority to deposit the money in his own bank account. *Id.* at 236. The D.C. Circuit rejected this argument and held that to accept it "would do violence to the statutory text." *Id. Chao* helps to illuminate Congress' intent in providing a route to fiduciary status that does not rely on discretion. If fiduciary status could be acquired only to the extent that an entity had discretion in their contract, thieves like the defendant in *Chao* would not be subject to ERISA's damage scheme. The exercise authority and control language in the statute covers this blind spot by impos-

ing liability on anyone who uses plan funds in a way that isn't authorized by the trustees. The court in *Chao* was careful to say, however, that this interpretation "does not, as [defendant] fears-extend fiduciary status to every person who exercises 'mere possession, or custody' over the plan's assets." *Id.* at 237.

■ It is undisputed that ILIAC exercised only mere possession or custody over the plan assets. To adopt the Plaintiffs' argument that ILIAC could be an ERISA fiduciary merely because it disposed of plan funds at the express direction of the Plan's trustees would expand ERISA liability beyond the scope intended in the fiduciary statute and recognized in the case law. It is difficult to imagine how any bank, which has practical authority and control over its deposits, would not be an ERISA fiduciary under the Plaintiffs' theory. To get their money out of a bank the Plaintiffs would still have to request the bank to disburse those funds, and the bank could refuse, even if they had no legal right to do so. This result, as the Report and Recommendation recognized, would be contrary to the intent of ERISA. (Report and Recommendation at 14.) Had ILIAC unilaterally disposed of the funds by wiring them to Prudential then it is possible that they would have assumed ERISA fiduciary status. However, lacking the unilateral element that distinguished between mere custodians and fiduciaries, it is not proper for this Court to conclude that ILIAC acted as a fiduciary in this case. Because the facts are uncontested, partial summary judgment should be granted in ILIAC's favor.

The Court notes, like the Report and Recommendation, that this does not foreclose the Plaintiffs' recovery. Whether ILIAC breached its contract or performed its duties under that contract negligently are beyond the scope of this motion.

## CONCLUSION

ILIAC did not exercise the authority and control over plan assets and acted as a mere custodian. Therefore, ILIAC cannot be an ERISA fiduciary under § 1002(21)(A)(i) and is not subject to ERISA liability.

## *ORDER*

### NOW THEREFORE IT IS HEREBY ORDERED:

1) The Report and Recommendation entered on June 6, 2010 (Dkt. No. 53) be **INCORPORATED** by reference and **ADOPTED** in its entirety.

2) Defendant's Motion for Partial Summary Judgment (Dkt. No. 27) be **GRANTED.**

## REPORT AND RECOMMENDATION

LARRY M. BOYLE, United States Magistrate Judge.

Currently pending before the undersigned Magistrate Judge by Order of Referral dated February 24, 2010 (Docket No. 46), is Defendant's Motion for Partial Summary Judgment (Docket No. 27). The Court heard oral argument of counsel and took the motion under advisement on April 28, 2010. Having carefully reviewed the parties' briefs, cited authorities and the existing record, the following Report and Recommendation is issued.

## BACKGROUND

Building Materials Holding Corporation (BMHC) is a holding company which provides capital, management and administrative resources to its subsidiaries which provide building materials and residential construction services throughout the United States. *Statement of Undisputed Material Facts Supporting Defendant's Motion for Partial Summary Judgment on Counts One and Two of Plaintiffs' Complaint* (Docket No. 28) *("DSOF")*, ¶¶ 1 & 3. Plaintiffs to this action include BMHC, as the sponsor and named fiduciary of one of its retirement plans [1] ("the Plan"), and the other named fiduciaries suing on behalf of the Plan. Defendant is ING Life Insurance & Annuity Company ("ILIAC").

ILIAC entered into a contract with the Plan trustees on behalf of the Plan to provide certain administrative services to the Plan in connection with ILIAC's holding the invested Plan funds in an annuity. *DSOF*, ¶ 1; *Affidavit of Ian Dunn* (hereafter, "Dunn Aff."), Exh. A (hereafter, "Contract") (Docket No. 31). The services included processing contributions to the Plan (*Contract,* § 3.01), allocating contributions according to the express instructions of the Plan's trustees or participants (*id.,* § 3.02), and making payments to the Plan's participants or others as directed "in writing" by the Plan, (*id.,* § 8.06). *See also Plaintiffs' Statement of Facts In Response to ILIAC's Motion For Partial Summary Judgment Filed on January 4, 2010 (Clerks Docket 27),* (Docket No. 37–1) (hereafter, "PSOF"), ¶¶ 1–4.

Under the Contract, ILIAC purchased investments with the contributions it received, as directed by the Plan trustees or participants, from a list of options preselected and approved by the trustees, and maintained individual record-keeping accounts for each Plan participant. *See Contract,* § 3. If ILIAC received a contribution, but no allocation instructions, the Contract provided that ILIAC would return the contribution. *Contract,* § 3.02.

1. The name of the plan involved in this case is BMHC 401(k) and Saving Plan, but the named plaintiff is BHMC BMCC Employees Savings & Retirement Plan for reasons which remain unclear to this court but are not at issue in this motion. For the sake of avoiding confusion, the Court will refer only to "the Plan."

Once Plan contributions were transmitted to ILIAC, the funds were held in open-ended mutual funds in the investment market. *Dunn Aff.*, Exh. C; *PSOF*, ¶ 3. The Plan trustees and participants did not have direct access to the funds. *PSOF*, ¶¶ 1–4. ILIAC was the sole signatory on the Plan accounts, and had the exclusive authority to write checks on the accounts to make the payments or invest the funds as directed by the trustees or Plan participants. *Id.* The Contract provided, however, that the trustees directed all distributions, and could terminate the Contract at any time. *See Contract*, § 5.06

ILIAC made payments to itself for its administrative fees which were pre-determined by formula set forth in the Contract on a quarterly basis. *PSOF*, ¶ 5.

The Contract specifically stated that ILIAC was "not the Plan administrator or the fiduciary and has no discretion or control over the Plan or its assets." *Contract*, § 2.01.

The Plan trustees, on behalf of the Plan, also signed several other documents in conjunction with the Contract:

- the "ING MAP Plus Contract Charges, Compensation, Disclosure, Fund Selection, and Plan Administrative Support" document which listed the administrative support services ILIAC agreed to provide under the Contract including certain record keeping services, (*Dunn Aff.*, Exh. C) (hereafter, "Administrative Support Document");
- a Contract Services Agreement whereby the Plan elected the accounts to create at ILIAC and how funds would be transferred by the Plan to those accounts, (*Dunn Aff.*, Exh. D);
- an Application for Group Annuity Contract, (*Dunn Aff.*, Exh. E); and
- a Third Party Administrator (TPA) Payment Request establishing Pinnacle Pension Services of Boise, Idaho as

the Plan's third party administrator, and directing ILIAC to distribute a predetermined fee to Pinnacle out of the Plan assets; (*Dunn Aff,* Exh. F). *See also PSOF*, ¶ 6.

In early January 2008, Plan representatives began discussions with ILIAC regarding the Plan's intent to terminate its Contract with ILIAC and to transfer the Plan's funds to Prudential. ILIAC representatives worked with the trustees and Prudential to accomplish the transfer. *See Dunn Aff.*, Exhs. G, I–K; *Supplemental Affidavit of Ian Dunn*, Exh. H (Docket No. 40–1); *PSOF*, ¶ 9. On April 28, 2008, Stephanie Erickson, a named Plan trustee, directed ILIAC to "liquidate the assets in all of the plans … and wire the proceeds to Prudential on May 1, 2008 using the wire instructions [enclosed]." *Dunn Aff.*, Exh. M. "[T]he trustees, the participants and Prudential were dependent on ILIAC to make the transfer." *PSOF*, ¶ 7.

On May 1, 2008, ILIAC entered the wire transfer on 2:22 pm, it was approved at 2:22 pm, and "the funds were released from ILIAC's control at 3:59 pm EST." *DSOF*, ¶ 17; *Dunn Aff.*, Exh. N. Prudential received the Plan funds at 4:26 pm EST. *DSOF*, ¶ 17; *Compl.* ¶ 26.

Plaintiffs claim that because Prudential did not receive the Plan funds of approximately $104 million by 4:00 pm EST, the Plan lost in excess of $375,790.16 in gains it would have otherwise realized from the market on May 1st. *Dunn Aff.*, Exh. O. Plaintiffs allege claims for relief for breach of fiduciary duty under several provisions of ERISA and under Idaho state law, negligence, promissory estoppel and breach of contract. Defendant seeks partial summary judgment in its favor on Plaintiffs' ERISA claims only. Specifically, ILIAC moves for summary judgment on Plaintiffs' first two causes of action which allege breach of fiduciary duty under (1) sections

404 and 502(a)(2), and (2) sections 404 and 502(a)(3) of ERISA.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

One of the principal purposes of the summary judgment motion "is to isolate and dispose of factually unsupported claims .…" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327, 106 S.Ct. 2548. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis omitted).

■ The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

■ The Court must be "guided by the substantive evidentiary standards that ap-

ply to the case." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Id.* at 256–57, 106 S.Ct. 2505. The non-moving party must go beyond the pleadings and show "by [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quotations omitted).

## ANALYSIS

There are no disputed questions of fact in this case.[2] The issue presented by the current motion is one of law,[3] and narrow: Whether ILIAC assumed a fiduciary responsibility to the Plan under ERISA when it transferred all of the funds in its possession to Prudential pursuant to the trustees' directions upon termination of

---

**2.** It is undisputed that the Plan is a sponsored employee benefits plan governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

**3.** *See* 29 U.S.C. § 1002(21)(A). *See Kayes v. Pacific Lumber Co.*, 51 F.3d at 1458; *see also*

*Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir.2001) (Where there are no disputed questions of fact, the fiduciary status of an individual or entity is a matter of law for the Court to determine.)

ILIAC's administrative services contract. Plaintiffs contend that ILIAC assumed fiduciary responsibilities in exercising control over the disposition of the Plan assets. ILIAC denies that it exercised the requisite control over the Plan's assets, and maintains that its role was purely administrative and its function in transferring the Plan funds was purely ministerial. As such, ILIAC argues, as a matter of law, it is not a fiduciary to the Plan, and its obligations and responsibilities are governed exclusively by the terms of the administrative services contract.

## A. Applicable Law on ERISA Fiduciary Status.

ERISA specifies three ways in which one may obtain fiduciary status. The statutory provision relevant to this matter [4] provides that a fiduciary is someone who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... [or] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i) and (iii). *See Patelco Credit Union v. Sahni,* 262 F.3d 897, 907 (9th Cir.2001). The Ninth Circuit construes this definition liberally. *See Arizona State Carpenters Pension Trust Fund v. Citibank,* 125 F.3d 715, 720 (9th Cir.1997). Determinations of whether a party is a fiduciary focus on the party's functional control and authority over a plan or its assets rather than how their duties are formally characterized. *CSA 401(K) Plan v. Pension Prof'ls, Inc.,* 195 F.3d 1135, 1138 (9th Cir.1999).

> ERISA ... require[s] ... that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions.... Thus,

the statute does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary only "to the extent" that he acts in such a capacity in relation to a plan. 29 U.S.C. § 1002(21)(A). In every case charging breach of ERISA fiduciary duty ... the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the actions subject to complaint.

*Pegram v. Herdrich,* 530 U.S. 211, 225–26, 120 S.Ct. 2143, 2152–153, 147 L.Ed.2d 164 (2000).

## B. Discussion

Plaintiffs contend that ILIAC is a fiduciary primarily because it exercised control over the disposition of the plan assets when it transferred the funds to Prudential on May 1, 2008. *See* 29 U.S.C. § 1002(21)(A)(i). Plaintiffs also contend that ILIAC exercised control over the plan assets by:

● receiving payments or assets ... that were contributed on behalf of plan participants and then placing those assets into its fund over which it had authority, *Trustees of S. Cal. Bakery Drivers Sec. Fund v. Middleton,* 474 F.3d 642, 646 (9th Cir.2007);

● being the only signatory on the Plan accounts, *IT Corp. v. General American Life Insur. Co.,* 107 F.3d 1415, 1421 (9th Cir.1997) ("The right to write checks on plan funds is 'authority or control respecting management or disposition of its assets,'") (*quoting* 29 USC § 1002(21)(A)(I)); and

4. Plaintiffs concede that the first two—as a "named fiduciary," 29 U.S.C. § 1102(a)(1), or

an "investment manager," 29 U.S.C. § 1002(38)—are not at issue in this case.

- writing checks to pay participants and by paying itself its administrative fee, *Briscoe,* 444 F.3d 478, 493 (6th Cir.2006).

Plaintiffs rely primarily on *IT Corp. v. General American Life Insur. Co.,* 107 F.3d 1415 (9th Cir.1997), in support of their claim. In that case, IT Corporation hired General American Life Insurance Co. (hereafter "General American") to administer its employee health benefits plan. *Id.* at 1417. Under the governing document (the "Administrative Services Agreement"), IT Corp. was to establish a bank account and maintain a sufficient balance to cover checks. General American had check writing authority, and was to pay all claims it determined were payable, but refer contested or doubtful claims to the trustees. *Id.* at 1417–18. With this check-writing authority, General American ended up paying out $600,000 from the ERISA plan bank account for medical expenses for an employee's dependent child who was allegedly ineligible for benefits. The Plan, IT Corp., and a participant-employee sued General American for breach of fiduciary duty under ERISA for depleting the amount available in the fund account for proper claims. The district court dismissed that action.

The Ninth Circuit reversed the district court, holding that there were questions as to whether or not General American was a fiduciary under ERISA based on (1) its discretionary authority over the Plan involved in deciding which claims were contested or doubtful, and which to pay, and (2) its control or authority over the management or disposition of the plan assets through its check-writing authority. *See id.* at 1420. The court specifically noted that its second finding did not depend on General American having discretion, and

found on the record as it stood, that General American controlled the money in the plan's bank account. Specifically, the Court noted that "as a practical matter, a substantial amount of money would be under the control of General American, in the form of a bank account which it could deplete by writing checks." *Id.* at 1421.

The Ninth Circuit in *IT Corp.* could not reconcile General American's control over the plan's bank account with a holding that it was not a fiduciary *as a matter of law. Id.*[5] The Court reasoned that "the words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a person with the authority to direct payment of the plan's money to be deemed a fiduciary." *IT Corp.,* 107 F.3d at 1421 (emphasis added).

Plaintiffs argue here that similarly, ILIAC was a fiduciary because it alone had the practical control over and ability to effectuate their transfer from ILIAC's possession to Prudential on May 1, 2008. No other person or entity had the ability to effectuate the release. *See Statement of Undisputed Material Facts,* ¶ 7 ("The Funds were released from ILIAC's control at 3:59 pm EST.")

ILIAC argues, however, that it is not a fiduciary because it in fact had no control or authority over the Plan assets because it operated only at and upon the express direction of the Plan trustees or participants. ILIAC argues that as a matter of law, this is not "exercising any control or authority over the management or disposition of plan assets." 29 U.S.C. 1002(21)(A)(i).

---

**5.** However, because the Court of Appeals was not considering an appeal of a district court ruling on cross-motions it did not hold as a matter of law that an entity with check writ-

ing authority necessarily was a fiduciary. The Court of Appeals simply could not agree that General American was *not* a fiduciary *as a matter of law.*

ILIAC argues that Congress intended to exempt from the terms "control or authority," any type of act that may be considered *purely ministerial,* and that ILIAC's functional duties under the governing agreements were just that—purely ministerial. Defendant points to 29 C.F.R. § 2509.75–8, which reads in relevant part:

D–2 Q: Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:

(1) Application of rules determining eligibility for participation or benefits;

(2) Calculation of services and compensation credits for benefits;

(3) Preparation of employee communications material;

(4) Maintenance of participants' service and employment records;

(5) Preparation of reports required by government agencies;

(6) Calculation of benefits;

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) *Collection of contributions and application of contributions as provided in the plan;*

(9) Preparation of reports concerning participants' benefits;

(10) Processing of claims; and .

(11) Making recommendations to others for decisions with respect to plan administration?

A: No. Only persons who perform one or more of the functions described in section 3(21)(A) of the Act with respect to an employee benefit plan are fiduciaries. *Therefore, a person who performs purely ministerial functions such as the types described above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.*

(Emphasis added).

ILIAC argues that because the governing agreements specify that ILIAC perform the same or similar duties as described above and only "within a framework of policies, interpretations, rules, practices and procedures made by other persons," ILIAC cannot be a fiduciary. With respect to the transfer of the funds specifically, ILIAC points to the fact that the funds were transferred pursuant to the wire transfer instructions from the trustees, and that ILIAC otherwise would have had no authority to transfer the funds to Prudential. Accordingly, ILIAC argues that it did not exercise control over the disposition of the assets, and did not assume fiduciary status as a matter of law.

ILIAC relies on *Arizona State Carpenters v. Citibank,* 96 F.3d 1310 (9th Cir. 1996), *withdrawn by* 108 F.3d 216 (9th Cir.1997) (February), *and superceded by,* 125 F.3d 715 (9th Cir.1997) (September), for support for its position. In that case, Citibank served as the depository and custodial agent for certain pension trust funds. Pursuant to the governing agreements, Citibank was required to (1) receive the fund monies and pay them out as directed by the trustees or their agent; (2) receive and hold trust fund investments (and income) for disposition as directed by

the trustees or their agent; (3) invest and reinvest trust fund monies as directed by the trustees or their agents, and (4) furnish regular reports regarding the trust fund money transactions. 125 F.3d at 718.

The agreements in *Arizona State Carpenters v. Citibank* also named a fund administrator and an investment manager. *Id.* The trust funds in that case suffered significant losses due to advice from the investment manager, and the trustees brought suit. They made a claim against Citibank for breach of the custodial agreement in failing to notify them of defaults on payments on investments that the investment manager made on behalf of the trust funds. *Id.* at 719. The trustees also claimed breach of fiduciary duty under ERISA. *Id.*

The district court concluded that Citibank was not a fiduciary and the Ninth Circuit Court of Appeals affirmed in relevant part. The Ninth Circuit court framed the issue as follows:

> Whether, pursuant to ERISA § 405(c)(1)(B), the trustees delegated to Citibank fiduciary responsibilities to hold, safeguard, and account for the plans' assets and income, thereby making Citibank a fiduciary under ERISA §§ 3(21)(A), 404(a), 405(a), 409(a), and 502(a)(2).

*Id.* at 720–21.

The Ninth Circuit court concluded that the bank had not assumed a fiduciary role, and reasoned as follows:

> A person or entity who performs only ministerial services or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary. To become a fiduciary, the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan.

*Id.* at 721–22 (*citing* 29 C.F.R. § 2509.75–8).

The Court of Appeals then held that Citibank's preparing reports and making decisions about the reports' format did "not amount to an assumption of control or authority over the Trust Funds which, by the terms of the Agreements, Citibank did not have." *Id.* The court further reasoned that to hold otherwise, among other things, would "creat[e] a climate in which depository institutions would routinely increase their fees to account for the risk that fiduciary liability might attach to non-fiduciary work." *Id.*

ILIAC contends here that, like Citibank functioning as a depository, it exercised no authority or control over management or disposition of the Plan assets when is acted solely at the direction of the Plan trustees and or participants.

After a careful and thorough review of the record, and applying controlling legal authorities, this Court agrees with ILIAC. The record does not support a conclusion that ILIAC exercised the requisite control or authority over the management or disposition of the plan assets in performing its functions as the plan administrative service provider in connection with the annuity. As a practical matter, ILIAC did not have "*the authority to direct payment of the plan's money*" generally in order to "be deemed a fiduciary." *See IT Corp.*, 107 F.3d at 1421 (emphasis added). Further, this Court cannot find that ILIAC's act of transferring the funds to Prudential at the direction of the trustees in termination of the contract converted ILIAC to the status of a fiduciary.

In this instant action, ILIAC's express role, function and responsibilities set forth in the parties' agreements are nearly identical to those identified in the federal regulation as "purely ministerial." *See* 29 C.F.R. § 2509.75–8. The crux of this issue

therefore comes down to whether ILIAC otherwise voluntarily assumed a fiduciary duty by taking physical possession and control of the Plan assets in order to carry out its ministerial role. After a careful analysis of the record and applicable, controlling law, this Court is not persuaded that is the appropriate legal or factual conclusion to reach.

■ It is true that the applicable statutory provision treats management and control *over funds* differently from management and control over *administration of the plan,* expressly requiring discretion be involved in the former, but not the latter. *See IT Corp. v. General Am. Life Ins. Co.,* 107 F.3d 1415, 1421–1422 (9th Cir.1997); *Patelco Credit Union v. Sahni,* 262 F.3d 897, 909 (9th Cir.2001); (*Yeseta v. Baima,* 837 F.2d 380, 386 (9th Cir.1988)). It is also true that the terms "any authority or control" could conceivably include mere physical control or possession. In this Court's view, however, this is not the intent of ERISA as clarified by controlling Ninth Circuit precedent.

The best indication from the Ninth Circuit Court of Appeals on the issue of mere physical possession or control is found in *IT Corp.,* in the court's comment distinguishing *Arizona State Carpenters:*

> Authority over a plan's money is not the same thing as being a depository of the money. If the plan's money is deposited in a bank, that does not *ipso facto* make the bank a fiduciary. *Arizona State Carpenters Pension Trust Fund v. Citibank* (Arizona), 96 F.3d 1310, 1317 (9th Cir.1996). When money is deposited in a bank, generally the bank has no authority over who the money is paid to, and the bank manages its own money, not the depositor's because the depositor loans its money to the bank for its own use. People with checking accounts do not worry that their banks will pay out their money to persons of the banks'

> choice, because the bank has no authority or control entitling it to pay anyone but payees and endorsees on checks. Unlike Citibank in *Arizona* [sic] *Carpenters,* General American had authority to write checks, that is, to dispose of plan assets.

*IT Corp.,* 107 F.3d at 1422; *see also id.* at 1419 ("If a fiduciary tells a bookkeeping service to send a check for $950 to Mercy Hospital, the bookkeeping service does not thereby become a fiduciary."); *Chao v. Day,* 436 F.3d 234, 237 (D.C.Cir.2006) (ERISA's control or authority clause does not "extend fiduciary status to every person who exercises 'mere possession, or custody' over [a] plan['s] assets.") (internal citations and quotations omitted).

After considering all alternatives, this Court concludes that practical control is the pivotal issue. The Tenth Circuit notes in *David P. Coldesina, DDS PC, Employee Profit Sharing Plan and Trust,* 407 F.3d 1126, 1133–34 (10th Cir.2005):

> Indeed, this practical reality is precisely why control over assets is treated differently than control over management.... As a general matter, a relationship of trust is established when one acquires possession of another's property with the understanding that it is to be used for the owner's benefit, and in these circumstances an obligation arises on the part of the one in possession to act in the owner's bests [sic] interests rather than his own. As such, assigning fiduciary obligations serves the purposes of ERISA.

■ A person or entity who acts only at the direction of another, and has no authority to manage or dispose of assets without such direction, does not have "practical control or authority" over the assets. *Accord IT Corp.,* 107 F.3d at 1422 (distinguishing mere depository institution

from entity exercising authority or control).

In this instant action, ILIAC did not have the requisite authority or control to direct payment out of the Plan funds generally that would give rise to or create a fiduciary status. ILIAC acted only in accordance with the express direction of the Plan trustees, or participants. Accordingly, unlike the defendant plan administrator in *IT Corp.*, but akin to the trust fund depository and custodian in *Arizona State Carpenters* case, the Plan at issue here was not in the position of "worrying" that ILIAC would pay out the Plan's money to persons of ILIAC's choice. *See IT Corp.*, 107 F.3d at 1422. Instead, ILIAC transferred the money to Prudential, upon termination of the contract, as specifically directed by the Plan trustees. Whether it did so in a negligent manner, or in breach of the parties' governing documents, is another matter-but this Court concludes that it is not a matter which invokes a fiduciary status under ERISA.

Moreover, as implied by the Ninth Circuit Court of Appeals, the act of transferring the money to Prudential upon termination of the Contract did not convert ILIAC-an otherwise non-fiduciary—into a fiduciary. *See Arizona State Carpenters Pension Trust Fund*, 125 F.3d at 722 (discouraging attaching fiduciary status to non-fiduciary work). Inherent in taking possession of the Plan funds without assuming a fiduciary role is the converse ability to return the Plan funds without assuming a fiduciary role. Thus, this Court concludes that ILIAC did not assume fiduciary responsibility in its relationship with the Plan as a matter of law, and recommends that Defendant's motion for partial summary judgment be granted.

### RECOMMENDATION

Based upon the foregoing, the Court hereby recommends that Defendants' Motion for Partial Summary Judgment (Docket No. 27) be GRANTED.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1 and that the failure to do so may result in that party waiving the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals. The parties are advised further that this is a report and recommendation and not a final, appealable order, and thus no appeal can be taken from this report and recommendation.